IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GUY BURCH,                                              CV. 05-676 KI

           Plaintiff,                                OPINION AND ORDER

   v.

JOANNE B. BARNHART
Commissioner of Social Security,

           Defendant.

KING, Judge:

## INTRODUCTION

Plaintiff, Guy Burch ("Burch"), brings this action pursuant to the Social Security Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Supplemental Security Income ("SSI") benefits. For the reasons set forth below, the decision of the Commissioner is reversed and this matter is remanded for the calculation of benefits.

1  - OPINION AND ORDER

**PROCEDURAL BACKGROUND**

Burch protectively filed an application for benefits on December 27, 1999, alleging disability since November 1, 1999, due to back pain and mental limitations. His application was denied initially and upon reconsideration. On June 28, 2002, Burch protectively filed another application for SSI disability benefits, alleging disability commencing June 1, 1999. This application was denied initially and upon reconsideration. On December 17, 2003, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated February 27, 2004, the ALJ found Burch was not entitled to benefits. On June 1, 2004, the Appeals Council granted Burch's request for review, and remanded the case for further proceedings. A second hearing was held on October 20, 2004, and on December 16, 2004, the ALJ found Burch was not entitled to benefits. On March 8, 2005, the Appeals Council denied Burch's request for review, making the ALJ's decision the final decision of the Commissioner.

Burch now seeks judicial review of the Commissioner's decision.

**FACTUAL BACKGROUND**

Born in 1963, Burch was 40 years old on the date of the ALJ's decision. He completed high school in special education programs, after which he received some monetary benefits, though it is not clear whether these benefits were SSI disability benefits or General Assistance benefits. He has worked as a gas station attendant, airport ground transportation assistant, bouncer, and landscape laborer. The medical records submitted in this case accurately set forth Burch's medical history as it relates to his claim for benefits. The court has carefully reviewed the records, and the parties are familiar with them. Accordingly, the details of those records will not be recounted here.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert denied*, 517 US 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR § 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

3  - OPINION AND ORDER

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity.  If so, the claimant is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two.  20 CFR § 416.920(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  If not, the claimant is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under step three.  20 CFR § 416.920(c).

Step Three.  Because disability cannot be based solely on a severe impairment, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration ("SSA") regulations, 20 CFR Part 404, Subpart P, Appendix 1.  If so, the claimant is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner proceeds to step four.  20 CFR § 416.920(d).

Step Four.  The Commissioner determines whether the claimant is able to perform work he or she has done in the past.  If so, the claimant is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner proceeds to step five.  20 CFR § 416.920(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  If not, the claimant is disabled.  If the Commissioner finds the claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part

404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can do, then the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 CFR § 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id*

## ALJ's DECISION

At step one, the ALJ found Burch had not engaged in substantial gainful activity since his protective filing date of June 18, 2002. This finding is not in dispute.

At step two, the ALJ found Burch had the medically determinable severe impairments of borderline intelligence, a reading disorder, intermittent explosive disorder, methamphetamine dependence in full remission, a lumbar strain, and a right hand strain. This finding is in dispute.

At step three, the ALJ found that Burch's impairments did not meet or medically equal the criteria of any listed impairments. The ALJ determined that Burch had the residual functional capacity to perform medium work that did not involve constant fine fingering with either hand (right more than left), and no exposure to toxic gases, fumes or odors. In addition, the ALJ found that the work would have to be simple, three-step tasks requiring no more than basic reading and math, and limited interaction with the public and co-workers.

At step four, the ALJ found that Burch could not perform his past relevant work.

At step five, the ALJ found that Burch retained the capacity to perform work existing in significant numbers in the national economy, specifically laundry folder and produce sorter. As a result, he found Burch not disabled within the meaning of the Act.

## DISCUSSION

Burch contends that the ALJ erred by: (1) finding his cancer was not a severe impairment at step two; (2) failing to find that he met or medically equaled Listing 12.05C; (3) rejecting the opinion of his examining physician; (4) finding him not fully credible; and (5) making a defective residual functional capacity finding, leading to an improper step five finding. Because the first two issues are dispositive, the court need not address the latter three.

## I. DETERMINATION OF SEVERITY AT STEP TWO

As to Burch's cancer, the ALJ stated:

> He visited Good Samaritan hospital in May 2003 because of groin pain that he thought was a hernia, which occurred after moving an organ [citation omitted]. No hernia was found. In April to June 2003, the claimant also had abdominal pain without a known cause that grew bad enough that he needed narcotics to control the pain enough to eat [citation omitted]. In July of 2003, the claimant was diagnosed with colon cancer, and a hemicolectomy was performed to remove the cancerous tumor [citation omitted]. Some lymph nodes were also removed, but the cancer had not spread [citation omitted].

Tr. 18.

> His recent colon cancer surgery, while severe, has been successfully treating [sic] with no further complications or re-occurrence of cancer.

Tr. 20.

The Commissioner argues that Burch's impairments due to colon cancer did not meet the twelve-month duration requirement of the Act. 20 CFR § 416.909. Burch first sought medical attention for abdominal pain in a March 1, 2003 emergency room visit. Tr. 549-60.[1] On April 17, 2003, Burch told his doctor that he had "had abdominal pain for approximately 6 weeks." Tr.

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

286.  On May 7, 2003 he told his doctors that he had had the pain since an organ fell on top of him "several months ago."  Tr. 269.  This incident occurred on February 17, 2003 as Burch was seen in the emergency room on that date for treatment of his injured ankle.  Tr. 539-48.  On June 24, 2003 Burch reported chronic abdominal pain for "approximately 6 months."  Tr. 606.  On June 25, 2003 doctors note "Review of his E-Chart reveals multiple visits and a workup for his abdominal pain.  The patient describes a 6-month history of sharp, stabbing abdominal pain that has progressively worsened."  Tr. 280.

The evidence indicates that no later than February 17, 2003, Burch was experiencing abdominal pain.  On July 21 colon cancer was diagnosed, and surgery was performed on July 22, 2003.  Tr. 290-91.  He began chemotherapy treatment on August 27, 2003.  Tr. 356.  He had almost weekly chemotherapy for six months, each week experiencing two to three days of diarrhea.  Tr. 347-56.  William P. Galen, M.D. stated that Burch had "some nausea....He is mildly retarded and does not recall directions."  Tr. 356.   Burch experienced depression, but had to cancel his appointment with a mental health specialist because of diarrhea.  *Id*   His last chemotherapy treatment occurred on January 28, 2004.  Tr. 407.  The doctor noted that Burch "tolerated chemotherapy well without major difficulties.  He denies any fevers, chills, nausea, vomiting, shortness of breath, peripheral edema or lymphadenopathy."  *Id*  By May 5, 2004, Burch had "no complaints.  His appetite is good.  He has no indigestion, nausea, or vomiting.  Bowels move normally."  Tr. 405.

The ALJ found that Burch has severe impairments of borderline intelligence and a reading disorder.  Burch was first able to articulate the presence of abdominal pain in mid February 2003.  Diagnosis and treatment continued until his last chemotherapy treatment on

January 28, 2004. Although fatigue is not addressed in the medical records, Burch was unemployed throughout the course of his treatment. It is not reasonable to assume that Burch had no residual effects from chemotherapy between the date of his last treatment, January 28, 2003, and mid February 2003. Considering his pre-diagnosis symptoms as well as the symptoms and limitations arising from treatment, Burch's colon cancer lasted twelve months, and the ALJ erred in finding it was not a severe impairment.

## II. STEP THREE DETERMINATION

As to Burch's mental impairments, the ALJ said:

> Psychological evaluations...revealed the claimant scored a verbal IQ of 72, a performance IQ of 76, and a full-scale IQ of 74, which was in the borderline range of intelligence but above the mental retardation range, and he showed marked limitations in reading and abstract thinking, in October 1990 [citation omitted]. At a more recent examination in July 2002, the claimant scored a verbal IQ of 69, a performance IQ of 76, and a full-scale IQ of 70, plus he showed some anger control problems that suggested intermittent explosive disorder [citation omitted].
>
> . . .
>
> In its remand Order, the Appeals Council opined the prior decision did not provided [sic] an assessment of the opinions of Dr. Ngan....The Appeals Council noted Dr. Ngan assessed a global assessment of functioning score of 45 and opined the claimant's social functioning appeared severely impaired and that his concentration, persistence and pace also appeared to be severely impaired.
>
> The Administrative Law Judge has carefully considered Dr. Ngan's opinions and has accorded it little weight as it is not supported by the totality of the medical records, the claimant's own testimony, the statement of 3rd party witness, and, is not even supported by her own evaluation. Dr. Ngan noted the claimant had only two anger outburst[s] in the six to eight months prior to her exam [citation omitted] and noted improvement in his anger control [citation omitted]. Dr. Ngan further noted the claimant had adequate concentration and put forth good effort and has appropriate social skills as he was cooperative

>and pleasant [citation omitted].  His mental exam revealed only mild impairment.

Tr. 17-18.

Burch contends that the ALJ erred by finding that his impairments did not meet or equal the requirements in the Listing of Impairments found at 20 CFR § 404, Subpart P, Appendix 1. Specifically, Burch argues that he meets or equals Listing 12.05C, which requires that a claimant have (1) subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22;  (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment that imposes an additional and significant work-related limitation of function.

As to the first element, Burch was in special education classes from kindergarten through high school and attended a basic skills class for adults, but was unable to learn basic reading and writing skills. Tr. 210.  His  reading, math and writing abilities are no higher than a third grade level.  Tr. 217-18; 219-25; 236-41.  There is no dispute that his cognitive limitations manifested before the age of 22.

As to the second element of Listing 12.05C, the Commissioner argues that the 'background portion' of the mental impairment Listings (12.00) requires that intelligence testing be accompanied by a narrative report on the consistency of IQ scores with developmental history and degree of functional limitation, citing 20 CFR subpt. P, app.1, at 12.00(D)(6)(a).  The regulation provides:

/ / /

/ / /

9  - OPINION AND ORDER

> The results of standardized intelligence tests may provide data that help verify the presence of mental retardation or organic mental disorder, as well as the extent of any compromise in cognitive functioning.  However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are valid and consistent with the developmental history and the degree of functional limitation.

The language of the regulation is not mandatory.  That the narrative report "should comment" does not mean that the narrative report "must" comment.  Burch's most recent intellectual testing was conducted by Dr. Wong-Ngan in July 2002.  Tr. 236-41.  Dr. Wong-Ngan found that Burch had a full scale IQ of 70, which "falls at the low end of the BORDERLINE range of intelligence (WAIS-3 manual), or high end of the range of mental retardation (DSM)."  Tr. 240, emphasis in original.  Dr. Wong-Ngan provides a lengthy and detailed narrative report, in which she notes that Burch was "mildly impaired on the mental status examination, a screening test of cognitive functioning," and that "[L]ikely there are concentration and memory problems associated with his low intelligence."  *Id*  In addition, Dr. Wong-Ngan stated:

> The prognosis appears guarded.  He has had some substantial employment.  However, his longest employment apparently involved special accommodation with his manager.  The combination of his low intelligence, poor literacy skills, and anger problems results in a guarded prognosis for employment....  Regarding social security disability criteria, he appears moderately impaired in ADLs due to limited literacy skills and intelligence.  Social functioning appears severely impaired due to anger control problems.  Concentration, persistence and pace appear severely impaired.  He has had no psychiatric decompensation per se.  However, his anger control problems clearly have caused significant dysfunction and maladaptation.

Tr. 240-41.  Although Dr. Wong-Ngan does not specifically state that the IQ scores are consistent with Burch's developmental history and degree of functional limitation, she does note that Burch

was not malingering.  Tr. 239.  Other examiners noted that "[t]he intellectual testing is certainly congruent with this man's report of being 'too slow' on various jobs in the past, and his ability to think abstractly, to show good judgment when working independently, or to understand and follow through with very complex verbal instruction is poor."  Tr. 217.  There is no evidence that Dr. Wong-Ngan found Burch's IQ scores inconsistent with the balance of her testing and observation.

The Commissioner argues that Burch cannot meet Listing 12.05C as he was not diagnosed with mental retardation.  The criteria of the Listing are clear.  By specifying IQ scores, the Commissioner made a determination about what constitutes mental retardation for the purposes of the Listing.  The Listing does not require a diagnosis of mental retardation.  Regardless, Burch was termed mentally retarded by Kirby J. Flanagan, M.D., Dr. Wong-Ngan, Ph.D., and his oncologist, Dr. Galen.  Tr. 213, 217-18, 296.

As to the third element of Listing 12.05C, the ALJ correctly found that Burch had the medically determinable severe impairments of a reading disorder, intermittent explosive disorder, a lumbar strain and a right hand strain.  In addition, as discussed above, his cancer constituted a severe impairment.  These additional impairments imposed additional and significant work-related limitations of function.

## III. REMAND FOR PAYMENT OF BENEFITS IS APPROPRIATE

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir.), *cert. denied,* 531 U.S. 1038 (2000); *Benecke v. Barnhart,* No. 03-15155, 2004 WL 1770096 (9th Cir. Aug. 9, 2004).  The court's decision turns on the utility of further proceedings.  A remand for

an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel,* 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (l) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*

The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See id.* at 1178 n.2.

The ALJ improperly rejected the evidence establishing the severity of Burch's cancer and mental limitations. If credited, the claimant's testimony and the doctors' testimony, establish that Burch could not work on a regular and sustained full-time basis on January 1, 1999, and therefore, he was disabled. The ALJ's determination that Nitsos was capable of performing work on January 1, 2002 is not supported by substantial evidence.

The court, therefore concludes this matter should not be remanded for further proceedings. *See Schneider v. Comm'r,* 223 F.3d 968 (9th Cir. 2000). *See also Reddick v.*

12 - OPINION AND ORDER

*Chater,* 157 F.3d 715, 729 (9th Cir. 1998) ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.")

## CONCLUSION

For these reasons, the Commissioner's decision should be reversed and remanded pursuant to sentence four of 42 USC § 405(g) for the calculation and award of disability benefits.

IT IS SO ORDERED.

Dated this   14th   day of July, 2006.

        /s/ Garr M. King
        GARR M. KING
        United States District Judge